■ WEST END INTERIORS, LTD., Appellant, v AIM CONSTRUCTION & CONTRACTING CORPORATION, Also Known as AIM CONSTRUCTION & CONTRACTING CORP., et al., Respondents. [729 NYS2d 112] —Judgment, Supreme Court, New York County (Barry Cozier, J.), entered April 11, 2000, in favor of defendants Aim Construction & Contracting Corporation, a/k/a Aim Construction &. Contracting Corp. (Aim), Isabella Geriatric Center, Inc., Iqbal Ahmad, a/k/a Mike Ahmad, and "John Doe" dismissing the first, second, third, fourth, fifth, sixth, eleventh and twelfth causes of action, unanimously modified, on the law, the facts and in the exercise of discretion, to reinstate the first, fifth and twelfth causes of action, the latter on condition that plaintiff move for class action certification pursuant to CPLR 902 within 30 days of service of a copy of this order with notice of entry, and, except as thus modified, affirmed, without costs or disbursements. Appeal from order, same court and Justice, entered March 22, 2000, to the extent that it granted summary judgment to said defendants dismissing the first, second, third, fourth, fifth, sixth, eleventh and twelfth causes of action, dismissed as superseded by the appeal from judgment entered April 11, 2000, and to the extent that the aforesaid order transferred the remainder of the action to the Civil Court of the City of New York pursuant to CPLR 325 (d), unanimously reversed, on the law, without costs or disbursements, and the said transfer vacated.

Aim, as contractor, and West End, as subcontractor, entered into two contracts whereby West End agreed to perform certain renovation work on two Manhattan buildings. In the first, the Isabella subcontract, West End, which had performed similar work for Aim on other projects, contracted to perform interior renovations for $530,000; in the other, the flooring subcontract, West End agreed to install resilient and ceramic tile at the Isabella project for $380,000. Under the Isabella subcontract, West End was to procure certain insurance coverage five days before the commencement of any work. If the insurance were not procured, as required, Aim had the right to terminate the subcontract. It also had the right to terminate the contract without fault on the part of the subcontractor. There is a dispute as to whether West End ever obtained the requisite insurance. While Aim claims that it sent various letters reminding West End of its insurance obligations, West End insists that these letters were never sent. In any event, by letter of September 11, 1998, the receipt of which is denied, Aim purportedly canceled the contract for non-submission of the proper insurance certificates, non-availability of supervision to control and timely finish the project and failure to submit a

detailed payment breakdown. The purported receipt for the certified letter is signed by "P. Brache," a person not known to West End. Paragraph 25.1 of the Isabella subcontract provided that, in the event of cancellation, Aim was obligated to pay West End "for that work actually performed in a [sic] amount proportionate to this Contract price, and in accordance to [sic] his approved detailed payment breakdown for items completed at the time of cancellation."

Over the course of the job, West End submitted 14 invoices for completed work, including work changes, for $478,693, for which Aim only made partial payments. When it did make a payment, Aim required an "Affidavit of Release," which acknowledged receipt of the progress payment and, in pertinent part, stated that such receipt released Aim "from any liens or suits arising from non-payment on the above referenced job." These partial payments totaled $199,500, leaving, according to West End, a balance of $279,193 still due.

West End brought this action alleging 12 causes of action, i.e., breach of contract, quantum meruit, unjust enrichment, money had and received, account stated, mechanic's lien foreclosure and Lien Law violation with respect to the Isabella subcontract, the flooring subcontract and another contract, not at issue. Interestingly, after alleging in paragraph 29 of the complaint that it had "duly performed all of the terms and conditions of the Flooring Contract on its part to be performed," in its opposing papers on this motion, West End concedes that Aim had given that job to another contractor who agreed to do the work for less money. After joinder of issue, Aim and the other defendants, jointly represented, moved for summary judgment dismissing the complaint, alleging, that at the time of cancellation, the only balance due was $10,500 ($199,500 for work done less $189,000 already paid); it also argued that the affidavits of release barred this action. In response, West End reasserted that a balance of $279,193 was due and argued that the affidavits of release were never intended to serve as a release of claims for unpaid work. After oral argument, the IAS court found that the affidavits of release were all-encompassing releases executed without protest and that West End had failed to comply with the procedural requirements of the Lien Law in seeking to file its mechanic's lien or to enforce the trust cause of action. It thus dismissed all the causes of action relating to the Isabella subcontract. This was error.

West End argues that the executed affidavits of release are ineffective to bar claims for additional payments where it was the general contractor's practice to condition any partial pay-

ments due on the execution of the release and the terms of the release itself expressly so provided. In such a case, the waiver form is construed as merely a receipt for the monies referenced in the waiver. (*Orange Steel Erectors v Newburgh Steel Prods.*, 225 AD2d 1010; *United States ex rel. F & G Mech. Corp. v Manshul Constr. Corp.*, 1998 US Dist LEXIS 17890, 1998 WL 849327 [94 CIV 2436 (CLP), Oct. 1, 1998, ED NY].) "[T]he intent to waive a right must be unmistakably manifested, and is not to be inferred from a doubtful or equivocal act." (*Orange Steel Erectors v Newburgh Steel Prods.*, *supra*, 225 AD2d at 1012.)

Moreover, Aim's conduct in subsequently paying West End for work theoretically released by prior payments is completely inconsistent with its theory of general release. Where a waiver form purports to acknowledge that no further payments are owed, but the parties' conduct indicates otherwise, the instrument will not be construed as a release. (*See, West End Interiors v Aim Constr. & Contr. Corp.*, 2000 US Dist LEXIS 12111, 2000 WL 1201389 [99 CIV 0199 (DFE), Aug. 22, 2000, SD NY].) As this record discloses, Aim, after making payment on a certain requisition and receiving an executed affidavit of release with respect thereto, made subsequent payments pursuant to the same requisition. Thus, the first cause of action for breach of the Isabella subcontract should be reinstated, along with the fifth cause of action for an account stated. The sixth cause of action for breach of the flooring subcontract should not be reinstated since West End has not shown that it performed any work under that contract and since paragraph 25.1 of the contract permits Aim to cancel without fault.

West End's parallel quasi-contract claims, i.e., quantum meruit (second), unjust enrichment (third) and money had and received (fourth) as to the Isabella subcontract, should not be reinstated. "The general rule is that the existence of a valid and enforceable written contract governing a particular subject matter precludes recovery in quasi contract for events arising out of the same subject matter." (*Curtis Props. Corp. v Greif Cos.*, 236 AD2d 237, 239.) While quantum meruit recovery is available where the defendant wrongfully prevents a plaintiff's performance of a written contract (*id.*), the frustration exception is not applicable here given the viability of the contract action and the fact that Aim could cancel the contract without fault on the part of the subcontractor provided that it paid West End for any completed work. Thus, West End's remedy lies in its contract action.

West End asserted two Lien Law causes of action in the

eleventh and twelfth causes of action, both of which were dismissed. While its brief does not address the dismissal of the eleventh cause of action to enforce a mechanic's lien, it does seek reinstatement of the twelfth, which alleges that an officer of Aim and a third party, identified only as "John Doe," received moneys from the owner for payment to it, which moneys Aim was obligated to hold in trust pursuant to article 3-A of the Lien Law. West End alleges a failure to do so in violation of Aim's statutory fiduciary duty. In dismissing this cause of action, the IAS court found that such a claim must be brought by a trustee in a representative capacity. On appeal, West End argues that it is an intended beneficiary of the moneys received and that the evidence shows that Aim's principal diverted these moneys. Section 77 (1) of the Lien Law permits any party with a trust claim to bring an action to enforce the claim on behalf of all beneficiaries; it requires, however, compliance with the procedural requirements of a class action. CPLR 902 requires that, in a class action, application for certification must be made to the court within 60 days after the expiration of the time to serve a responsive pleading. Here, the complaint was served on January 28, 1999 and the answer is dated February 17, 1999. The motion for summary judgment was made on October 28, 1999. At the earliest, West End's time to move for certification would not have expired until April 17, 1999. It should be noted that Aim did not move to dismiss the article 3-A claim on procedural grounds. In our discretion, we reinstate the twelfth cause of action on condition that West End move for certification, as indicated. Concur—Sullivan, P. J., Nardelli, Williams, Mazzarelli and Saxe, JJ.