*196 OPINION OF THE COURT
Carolyn E. Demarest, J.
In this action by plaintiff American Architectural, Inc. (AAI) arising out of a subcontract in connection with a public improvement construction project, defendants AMCC Corp. (AMCC), Charles Marino, and Liberty Mutual Insurance Company (Liberty) (collectively, defendants) move for an order, pursuant to CPLR 3211, dismissing AAI’s entire complaint as against them for failure to comply with a contractual dispute resolution procedure, and dismissing the second and third causes of action of AAI’s complaint based upon a contractual “no damages for delay” clause.
Facts
On February 3, 2006, AMCC, as general contractor, entered into a prime contract with the Dormitory Authority of the State of New York (DASNY) with respect to a public improvement construction project known as Brooklyn College New West Quad Building, at 2900 Bedford Avenue, in Brooklyn, New York (the project). Pursuant to the requirements of the prime contract and State Finance Law § 137, on February 9, 2006, Liberty, as surety, issued a labor and material payment bond (the payment bond) to AMCC, as principal, in the amount of $58,439,000, naming DASNY, as the owner and obligee. On August 8, 2006, AMCC, as contractor, entered into a written subcontract agreement (the subcontract), dated as of April 7, 2006, with AAI, as subcontractor, whereby AAI agreed to furnish and install certain specified steel, aluminum, and glass systems and elements for the project for a price of $7,754,000.
Article XXXXI of the subcontract, entitled “Dispute Resolution Procedure,” provided, in pertinent part, as follows:
“XXXXI. DISPUTE RESOLUTION PROCEDURE: Notwithstanding anything in this Subcontract and Prime Contract to the contrary, any disputes, claims or questions which arise during the Work shall be resolved in accordance with Contractor’s dispute resolution procedures as amended from time to time. A copy of the current dispute resolution procedure is attached hereto as Rider B and made a part hereof.”
Rider B to the subcontract, in turn, provided, in pertinent part, as follows:
“No claim, dispute, or questions arising out of or in *197 relation to the Subcontract, including without limit its interpretation, enforcement, performance, or application, shall give rise to, or be the subject of, an action or proceeding against the Contractor unless, as an express condition precedent thereto: (a) Subcontractor has exhausted all applicable procedures provided by Contractor, this Subcontract and/or the Prime Contract to requisition payments or, as the case may be, to apply for a change order, supplemental agreement or any other type or form of relief; and, in the case of an application for a payment, change order, supplemental agreement or any other type or form of relief which has already been denied or opposed by Contractor, has filed a written and verified notice of claim (‘Notice of Claim’) setting forth: (i) the dollar amount or other particular relief applied for; (ii) a specific and detailed description of the ground for the application for a payment, relating the dollar amount or other particular relief applied for to the events or occurrences referred to by the application; (iii) the manner in which the dollar amount applied for was calculated, or the manner in which any other relief applied for was formulated and how such relief is expected to assist or benefit the Subcontractor or the Work; and (iv) the date (or dates) of any events or occurrences underlying the application or pertaining to it. The failure to include all pertinent dates shall constitute an absolute and unconditional waiver of Subcontractor’s right to recover compensation under its Notice of Claim, and a Res Judicata bar to any action Subcontractor commences concerning that Notice of Claim.
“The Notice of Claim must be served on Contractor by filing an original with Contractor’s home office and a copy to Contractor’s field superintendent within seven (7) working days of Contractor’s action that Subcontractor disputes, questions, or seeks to review. The Contractor’s failure or omission to grant or approve the Subcontractor’s application for a change order, supplemental agreement or other type or form of relief within fifteen (15) days of Subcontractor’s submission of same to Contractor shall be deemed the Contractor’s denial of such application. . . .
“Failure to strictly comply with the Dispute Resolu *198 tion Procedure herein set forth, and strictly within the time periods herein set forth, shall constitute an absolute and unconditional waiver of Subcontractor’s right to recover extra or additional compensation, contractual payments, or such other relief as is sought in any particular circumstances, and shall preclude any action or proceeding by Subcontractor against Contractor to the extent such action or proceeding seeks the extra or additional compensation, contractual payments, or other relief that have been waived as herein provided. In any action or proceeding by Subcontractor against Contractor arising out of or in relation to, or in any manner or to any extent involving or referring to this Subcontract, the Prime Contract, or the work at the Project, as a further express and absolute condition precedent to the commencement of such action or proceeding, Subcontractor shall specifically plead full compliance with the Dispute Resolution Procedure herein in its Complaint or other pleading, the failure of which pleading shall constitute a bar to the action or proceeding and a ground for dismissal thereof. . . .
“Contractor or any other person designated by Contractor in Contractor’s sole and unreviewable discretion, shall be the sole arbiter of all claims, disputes, and questions of any nature whatsoever arising out of, or in connection with, or any way related to, or on account of the Contract, and in its capacity as sole arbiter shall determine, among other things, Subcontractor’s entitlement to compensation or other relief and/or the extent to which Subcontractor is entitled to compensation or other relief and all matters pertaining to payments, or relief, if any, as well as the relative responsibility of Contractor or Owner regarding any claim, dispute, difference, question or controversy presented for resolution hereunder by Subcontractor. The said determinations by the sole arbiter shall be final, conclusive and binding upon Subcontractor and Contractor; provided, however, that Subcontractor may seek judicial review of any such determination limited solely to the question whether the determination by the sole arbiter was made in bad faith or fraudulently, and Subcontractor knowingly and voluntarily waives all other rights, claims, causes of ac *199 tion, and remedies, including breach of contract, against Contractor.”
In addition, article XIII of the subcontract contained a “no damages for delay” clause, which, in pertinent part, provided as follows:
“DELAY: . . . Contractor owes no damage, duty, obligation, or liability to Subcontractor as a result of any delay, interference, suspension, or other event, except for seeking an extension of time from Principal. Subcontractor expressly agrees not to make, and hereby waives, any claim for damages, including without limit those resulting from increased labor or material costs, on account of any delay, obstruction or hindrance for any cause whatsoever, and that its sole right and remedy therefore shall be an extension of time.”
Beginning on or about December 29, 2006, AAI began its performance of the subcontract, and timely completed its installations. During the course of the project, AMCC requested and directed AAI to perform additional work, which was beyond the scope of the subcontract. AAI claims that under the terms of the subcontract, AMCC was obligated to pay it the agreed upon and fair and reasonable value of such additional work in the total amount of $1,139,908.89, raising the subcontract price to $8,893,908.89. AMCC has made payments to AAI under the subcontract, which total $7,529,072.46. AAI asserts that it is, therefore, still owed a balance of $1,364,836.43, plus interest. AAI alleges that despite due demand, AMCC has failed and refused to pay it this outstanding subcontract balance of $1,364,836.43, in breach of the subcontract.
AAI further alleges that AMCC breached the subcontract due to delays and interferences by it with AAI’s performance of the subcontract. Specifically, AAI asserts that when, in December 2006, it mobilized at the job site and was prepared to commence work, as per the project schedule, it performed a survey of the “as built” concrete and steel framing, which revealed that the existing structure was nonconforming with the tolerances set forth in the project’s contract documents. According to AAI, this delayed fabrication of curtain wall components and prevented it from commencing installation in the field, pending a solution to the issue of the nonconforming structural elements. AAI states that when this condition was reported to AMCC, the reaction of its principal and president, Charles *200 Marino, was to deny AMCC’s responsibility for the condition. AAI claims that AMCC’s refusal to take necessary corrective measures and resolve this impediment affected the critical path of construction progress. AAI additionally asserts that AMCC failed to coordinate the project and delayed trade work which needed to be completed before it could perform its subcontract work, and that AMCC also delayed its performance of its subcontract work by failing to process submissions and requests for information in a timely fashion.
AAI claims that because AMCC delayed its performance, this subsequently led to AMCC’s ordering it to accelerate its subcontract performance, and that such acceleration resulted in substantial additional costs and inefficiencies, for which AMCC has refused to compensate it. AAI further claims that AMCC disregarded its duty as a general contractor to manage and coordinate the project, and prevented proper payment to it by disregarding or altering payment requests made by it throughout the project. AAI asserts that due to all of these delays, it is entitled to damages for delays in the amount of $4,020,000, plus interest.
On or about February 19, 2010, AAI, as a trust beneficiary, served AMCC with a demand for verified statement of entries via certified mail, return receipt requested, pursuant to Lien Law § 76, which required AMCC to provide the trust account entries kept as required under Lien Law § 75. AAI asserts that although this demand was received by AMCC on February 19, 2010 and AMCC’s response was due to be served by March 1, 2010, AMCC has failed and refused to provide a verified statement of entries. AAI claims that this refusal was at the instance and request of Charles Marino. AAI asserts that such refusal creates an inference under Lien Law § 75 (4) that the required trust fund records have not been kept, and AAI maintains that AMCC and Charles Marino have participated in a diversion of trust funds, thereby constituting a breach of trust under Lien Law § 72 (1).
On March 3, 2010, AAI timely filed a notice of public improvement mechanic’s lien in the amount of $1,368,331.05 against the interest of AMCC in monies due or to become due under its prime contract with DASNY. On March 17, 2010, pursuant to Lien Law § 21 (5), AMCC discharged AAI’s mechanic’s lien by the filing of a bond issued by Liberty.
On July 9, 2010, AAI, individually and on behalf of all other lienors, claimants, or creditors for wages or materials in connec *201 tion with the subject public improvement, filed this action against defendants.[1] AAI’s complaint asserts five causes of action. AAI’s first cause of action seeks recovery for AMCC’s alleged breach of contract for failing to pay the adjusted subcontract balance of $1,364,836.43, which includes the alleged extra work. AAI’s second cause of action alleges that AMCC breached the subcontract as a result of AMCC’s alleged delays and interference with AAI’s performance of the subcontract, and seeks damages for delay in the amount of $4,020,000, plus interest. AAI’s third cause of action seeks recovery in the amount of $5,384,836.43 under the payment bond issued by Liberty for the claims set forth in its first and second causes of action (i.e., the $1,364,836.43 for the subcontract balance and the $4,020,000 in delay damages). AAI’s fourth cause of action seeks to foreclose the mechanic’s lien in the amount of $1,368,331.05 against the lien discharge bond posted by AMCC and Liberty. AAI’s fifth cause of action seeks to enforce a statutory trust claim under Lien Law article 3-A against Charles Marino and AMCC.
Discussion
In support of its instant motion, AMCC argues that AAI’s complaint must be dismissed, pursuant to CPLR 3211 (a) (1) and (7), based upon the documentary evidence and for failure to state a cause of action because AAI did not comply with the dispute resolution procedure and notice of claim requirements, set forth in article XXXXI and rider B of the subcontract, to which it agreed. AMCC has submitted the affidavit of Charles Marino, in which he attests that AAI did not serve a notice of claim, in the manner mandated by the subcontract, within seven working days of the events which gave rise to its complaint, relating to the alleged direction to perform extra work, the alleged nonpayment of the subcontract balance, or the events which allegedly delayed it back in December 2006. In addition, Charles Marino points to the fact that AAI failed to specifically plead full compliance with the dispute resolution procedure in its complaint, as mandated by the subcontract, as an express condition precedent to the commencement of an action under the subcontract.
In opposition to AMCC’s motion, AAI argues that the dispute resolution procedure in the subcontract, which provides that AMCC or its designee was the sole arbiter of all claims and *202 disputes under the subcontract, is void for illegality under the law of trusteeship and is unenforceable as a matter of law. AAI notes that under Lien Law article 3-A, AMCC, as a general contractor on a public improvement construction project, is a statutory trustee with respect to all funds it received from the owner, DASNY, for work performed on the project (see Lien Law § 70 [1]), and that, as a subcontractor to AMCC, AAI is a statutory beneficiary of that trust (see Lien Law § 71).
The Dispute Resolution Procedure
It is well settled that “[a] trustee must act in good faith in the administration of a trust, and this requirement means that it must act honestly and with the finest and undivided loyalty to the trust” (106 NY Jur 2d, Trusts § 362). “A trustee owes an undivided duty to its beneficiary, and it must not, under any circumstances, place itself in a position whereby its personal interest will come in conflict with the interest of the beneficiary or its duty as a trustee” (id.). “The standard of loyalty in trust relations does not permit a trustee to create or to occupy a position in which it has interests to serve other than the interest of the trust estate” (id.). A trustee may not “ ‘place[] itself in a position where its interest was or might be in conflict with its duty’ ” (Matter of Van Deusen, 37 AD2d 131, 133 [1971], quoting Matter of Ryan, 291 NY 376, 407 [1943]). Relying upon these general basic tenets of the law of trusteeship, AAI contends that the dispute resolution procedure runs afoul of AMCC’s obligations to AAI as a statutory trustee because it creates a conflict of interest in permitting AMCC to determine whether to retain public trust funds for itself or compensate AAI for work performed. AAI argues that this renders the arbitration provision void for illegality and unenforceable as a matter of law.
Citing to the fact that “[t]he purpose of the enactment of [Lien Law] article 3-A was to make more certain that laborers and materialmen on an improvement are paid from the project funds” (Frontier Excavating v Sovereign Constr. Co. of N.J., 30 AD2d 487, 489 [1968]), AAI correctly contends “ ‘[t]he trust concept was intended precisely to forbid that an owner, contractor or subcontractor act merely as entrepreneur and was intended to require that [it] act, instead, as fiduciary manager of the fixed amounts provided for the operation’ ” (id., quoting 1959 Rep of NY Law Rev Commn on Trust Fund Provisions of Lien Law, at 214). Lien Law article 3-A “makes it plain that the owner or the contractor is a trustee for the benefit of subcontractors, laborers and materialmen, who necessarily, therefore, *203 become cestuis que trustent or beneficiaries of such trusts” (Frontier Excavating, 30 AD2d at 489, citing Lien Law §§ 70, 71, 72). Thus, within the specific provisions of article 3-A, AAI has “the normal rights of a trust beneficiary” (Frontier Excavating, 30 AD2d at 489).
It is well established that “a trustee is normally required to act impartially in its dealings with the beneficiaries” (id. at 490, citing 2 Scott, Trusts § 183 [3d ed]). While a trustee under Lien Law § 74 (1) “is authorized to determine the order and manner of payment of any trust claims and to apply any trust asset to any purpose of the trust,” such authority granted to the trustee by Lien Law § 74 (1) is expressly circumscribed by Lien Law § 77 (3) (a) (iv), which “gives the court the right to end or limit the trustee’s discretion in the application of trust assets” (Frontier Excavating, 30 AD2d at 490-491). “It is thus apparent that the Legislature meant to subject the trustee to the surveillance and control of the court” (id. at 491). In P. M. Excavating v Matthews Indus. Piping Co. (115 AD2d 464 [2d Dept 1985]), the Court noted “any doubts that might exist as to the validity of a particular subcontractor’s claim [under Lien Law article 3-A] must be resolved in favor of permitting the claim.”
The dispute resolution procedure described in the subcontract, in which AMCC, as the statutory trustee, is given the right to act as sole arbiter, violates the principles of trusteeship as reflected in the Lien Law by creating an inherent conflict between AMCC’s duty to the trust beneficiaries and its own self-interest and is, therefore, unenforceable as an impediment to plaintiffs right to bring an action under article 3-A of the Lien Law.
With respect to plaintiffs fourth cause of action to foreclose upon its mechanic’s lien, rider B creates three conditions precedent to the subcontractor’s right to recover compensation to which it would be entitled under the Lien Law: exhaustion of the described alternative dispute resolution procedure before an arbitrator controlled by defendant contractor; the filing of a notice of claim with the contractor; and the pleading of compliance with the preceding procedural requirements, without which the subcontractor is deemed to have waived the right to recover, all of which violate the public policy reflected in the Lien Law.
In support of its contention that the contractual notice and dispute resolution provisions are void as against public policy, plaintiff relies upon West-Fair Elec. Contrs. v Aetna Cas. & Sur. *204 Co. (87 NY2d 148, 158 [1995]), in which the Court of Appeals held that a pay-when-paid provision, which extinguished a plaintiff subcontractor’s ability to enforce a mechanic’s lien by indefinitely deferring the right to be compensated for work done to an uncertain future event, thereby preventing the subcontractor from establishing entitlement to recover a present amount due from the general contractor, “a necessary element of the subcontractor’s cause of action to enforce its lien” (87 NY2d at 159), was void as against public policy pursuant to Lien Law § 34.
Lien Law § 34 provides:
“Notwithstanding the provisions of any other law, any contract, agreement or understanding whereby the right to file or enforce any lien created under article two is waived, shall be void as against public policy and wholly unenforceable. This section shall not preclude a requirement for a written waiver of the right to file a mechanic’s lien executed and delivered by [a prospective lienor] simultaneously with or after payment for the labor performed or the materials furnished has been made to such [prospective lienor] . . . .”
Article XXXXIII of the subcontract expressly provides for a waiver by the subcontractor of “all rights and remedies against the Contractor which are not expressly provided for by the said Article XXXXI and Rider B,” including “any claims of breach of contract or other alleged bases for damages or relief against the Contractor.” Clearly, the contractual language requiring service of a notice of claim in compliance with very specific requirements, compliance with the dispute resolution procedures set forth in rider B, and the pleading of such compliance as conditions precedent to the prosecution of any “action or proceeding” against the defendant AMCC, upon which defendants rely, is void and unenforceable as contrary to public policy with respect to plaintiffs fourth and fifth causes of action premised upon plaintiffs right to enforce its lien. Defendants’ motion to dismiss those causes of action premised upon the Lien Law must, therefore, be denied (see Perma Pave Contr. Corp. v Paerdegat Boat & Racquet Club, 156 AD2d 550 [2d Dept 1989]; cf. Navillus Tile v George A. Fuller Co., Inc., 83 AD3d 919, 920 [2d Dept 2011]; see also Navillus Tile, Inc. v Bovis Lend Lease LMB, Inc., 74 AD3d 1299, 1302-1303 [2d Dept 2010] [in which the Court found that a contractual notice provision did not deprive plaintiff of its right to foreclose its mechanic’s lien because it *205 was not, as here, an express condition precedent to suit, and did not, therefore, effect a waiver of lien rights in contravention of Lien Law § 34, implying, however, that such an express waiver would be void under Lien Law § 34]).
However, defendants’ motion to dismiss plaintiff’s contractual causes of action against AMCC, the first and second causes of action, must be granted as those contractual provisions, upon which the motion is predicated, are enforceable as terms of the contract. In Westinghouse Elec. Corp. v New York City Tr. Auth. (82 NY2d 47 [1993]), responding to a certified question from the Second Circuit, the State Court of Appeals expressly determined that a contractual provision mandating alternative dispute resolution by an employee of one of the parties was enforceable and not contrary to public policy, noting: “It is firmly established that the public policy of New York State favors and encourages arbitration and alternative dispute resolutions” (id. at 53). The Court held that the provision in the agreement for judicial review pursuant to CPLR article 78 brought the arbitration provision within the public policy of the State, finding that, by executing the contract, the contracting plaintiff had accepted the terms of the contract “with its business eyes open” and, although the terms were clearly one-sided, the agreement was not one of adhesion (id. at 54-55; see also Ferguson Elec. Co. v Kendal at Ithaca, 274 AD2d 890 [3d Dept 2000]).[2]
Although the judicial review provided in the contract at bar is not that contained in CPLR article 78, which is broader than that provided for review of arbitration awards contained in CPLR article 75, the standard set forth in the subject subcontract limiting review to whether the arbitrator’s determination “was made in bad faith or fraudulently” is consistent with the criteria set forth in CPLR 7511 (b) and thus “should be suf *206 ficient to regulate and remedy intolerable abuses and one-sided economic oppression” (Westinghouse Elec. Corp., 82 NY2d at 55). See generally Ardsley Constr. Co. v Port Auth. of N.Y. & N.J. (54 NY2d 876 [1981]), in which the Court of Appeals declined to determine whether judicial review of a decision rendered pursuant to an arbitration clause similar to that at bar should be that set forth under CPLR article 75 or the standard described in Tufano Contr. Corp. v Port of N.Y. Auth. (18 AD2d 1001 [2d Dept 1963], affd 13 NY2d 848 [1963]), more akin to that set forth in CPLR article 78.
In Matter of Astoria Med. Group (Health Ins. Plan of Greater N.Y.) (11 NY2d 128 [1962]), the Court declined to disqualify an arbitrator because of his relationship to one of the parties, relying on the oath taken by such arbitrator to hear the matter “faithfully and fairly” and “make a just award”, (at 137). See also Yonkers Contr. Co. v Port Auth. Trans-Hudson Corp. (208 AD2d 63 [2d Dept 1995], affd 87 NY2d 927 [1996]), in which the Court upheld a provision very similar to that at bar, concluding that the failure to plead compliance with the dispute resolution procedure required dismissal of the complaint, which alleged breaches of the contract, for failure to state a cause of action.
It is undisputed that plaintiff did not avail itself of the dispute resolution procedure required under the subcontract and certainly did not plead compliance therewith. As these are conditions precedent to bringing suit under the contract, plaintiffs failure to comply requires dismissal of the first and second causes of action, both of which are predicated on AMCC’s alleged failure to meet its contractual obligations to plaintiff.
Notice of Claim Provision
Defendants’ motion to dismiss is further predicated on plaintiffs alleged failure to give the notice required in rider B of the subcontract. Since this court has already determined that the waiver provisions of rider B render such provision void with respect to plaintiff’s Lien Law causes of action, but has dismissed the breach of contract claims against AMCC based upon plaintiffs noncompliance with the arbitration provision, it is unnecessary to reach this specific requirement. However, it is noted that plaintiff did give notice in substantial compliance with the contractual requirement with respect to the claims for extra work as demanded in the first cause of action. AAI has submitted the sworn affidavit of its president, John C. Melching, Jr., who annexes a notice of claim dated July 17, 2009, *207 made in response to a July 9, 2009 e-mail from AMCC denying change orders submitted by AAI. While AMCC contends that this notice of claim did not strictly comply with the notice of claim requirements of the dispute resolution procedure of the subcontract, this court fails to perceive how this is so as all of the details required under rider B, sufficient to enable full investigation, are set forth in the notice, by letter signed by Mr. Melching as plaintiffs president, although it is not expressly “verified.” The notice was provided within seven working days of AMCC’s rejection of the claims, as evidenced by the e-mail dated July 9, 2009. There is no such notice of any of the delay claims set forth in the second cause of action.
In A.H.A. Gen. Constr. v New York City Hous. Auth. (92 NY2d 20 [1998]), a complaint seeking damages for extra work was dismissed for failure to comply with contractual notice provisions which were conditions precedent to suit where there was no indication that the failure to comply was caused by the defendant’s misconduct. The Court noted that public policy favors enforcement of such provisions as they “provide public agencies with timely notice of deviations from budgeted expenditures or of any supposed malfeasance” allowing for measures which would avoid waste of public funds (92 NY2d at 34). Although the parties remaining in this action are not governmental agencies per se, the subcontract related to a public improvement owned by the State of New York and any additional funds expended would affect the public fisc. (See also Promo-Pro Ltd. v Lehrer McGovern Bovis, 306 AD2d 221 [2003].) Accordingly, this court would be required to dismiss the second cause of action for failure to provide timely notice of AAI’s claims for damages for delay based on AMCC’s alleged malfeasance in performing its duties under the subcontract,[3] but finds that because AAI did give timely notice of the claims for extra work contained *208 in the first cause of action, that cause of action would not be dismissed upon the ground of failure to give notice. Dismissal of the first cause of action is warranted, however, by the failure to plead compliance with such notice, which is a condition precedent to suit under the terms of the subcontract.
The Release
AMCC, in its reply papers, further raises the argument that a release bars AAI’s claims which were set forth in its July 19, 2009 letter.* **[4] In support of this argument, AMCC has submitted an “Affidavit, Waiver of Lien, and Release,” executed by AAI on December 28, 2009. Paragraph 7 of this purported release stated that AAI released, waived, and discharged AMCC and its sureties from all causes of action which it ever had, now had or ever will have against them by reason of delivery of material and/or the performance of work relating to the construction of the project.
“[I]t is well settled that absent fraudulent inducement or concealment, misrepresentation, mutual mistake or duress, a valid release that is clear and unambiguous on its face constitutes a complete bar to an action on a claim that is the subject of the release” (Diontech Consulting, Inc. v New York City Hous. Auth., 78 AD3d 527, 528 [2010]; see also Global Mins. & Metals *209 Corp. v Holme, 35 AD3d 93, 98 [2006]). However, “ ‘[t]he intent to waive a right must be unmistakably manifested, and is not to be inferred from a doubtful or equivocal act’ ” (see West End Interiors v Aim Constr. & Contr. Corp., 286 AD2d 250, 252 [2001], quoting Orange Steel Erectors v Newburgh Steel Prods., 225 AD2d 1010, 1012 [1996]).
AAI argues that the release relied upon by AMCC was not intended to encompass payment for its extra work. In support of this argument, AAI has submitted a surreply affidavit by Franklin D. O’Neal, who is the chief financial officer/controller of AAI, in which he explains that until AAI returned the executed lien waiver document for the previous month, AMCC would not release the current month’s payment. Mr. O’Neal attests that he would routinely execute the previous month’s lien waiver document and return it to AMCC in exchange for the current month’s payment, and that this process continued for years, during which work performed in previous months was paid for in subsequent months following execution of the lien waivers. Mr. O’Neal contends that, therefore, AMCC’s conduct indicated that it would not enforce the lien waiver as a release of claims since it paid for work in previous pay periods after it received an executed lien waiver from AAI and because it continued to execute subsequent change orders for work performed by AAI in prior billing periods.
A party may, by its conduct, implicitly recognize that a right to additional payment has not been extinguished by the releases in question (see Penava Mech. Corp. v Afgo Mech. Servs., Inc., 71 AD3d 493, 495 [2010]; E-J Elec. Installation Co. v Brooklyn Historical Socy., 43 AD3d 642, 643-644 [2007]). Here, the course of conduct between AAI and AMCC could be construed as an acknowledgment of AAI’s right to further payment. Thus, there are factual issues raised as to whether AMCC understood these executed lien waivers to constitute final and complete waivers of any further claims by AAI and whether AAI intended to waive such claims.
Claims against the Surety Bond
With respect to AAI’s third cause of action, which is asserted as against AMCC’s surety, Liberty, under the payment bond, AAI correctly argues that since the payment bond was issued by Liberty under State Finance Law § 137, the statute provides an additional remedy to AAI as an unpaid subcontractor, precluding dismissal of plaintiffs claim to recovery under the bond. State Finance Law § 137 (3) provides:
*210 “Every person who has furnished labor or material, to the contractor or to a subcontractor of the contractor, in the prosecution of the work provided for in the contract and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was performed or material was furnished by [it] for which the claim is made, shall have the right to sue on such payment bond in [its] own name for the amount, or the balance thereof, unpaid at the time of commencement of the action.”
State Finance Law § 137 (4) (b) provides that “no action on a payment bond furnished pursuant to this section shall be commenced after the expiration of one year from the date on which final payment under the claimant’s subcontract became due.”
“By enacting State Finance Law § 137, the Legislature intended to supplement the Lien Law and to guarantee payment through a bond to persons furnishing labor and material on public improvement projects even though there are insufficient funds against which a lien could be filed” (Harsco Corp., Patent Constr. Sys. Div. v Gripon Constr. Corp., 301 AD2d 90, 93 [2002]; see also Davidson Pipe Supply Co. v Wyoming County Indus. Dev. Agency, 85 NY2d 281, 285 [1995]; Chittenden Lbr. Co. v Silberblatt & Lasker, 288 NY 396, 402 [1942]; Dutchess Quarry & Supply Co. v Firemen’s Ins. Co. of Newark, N.J., 190 AD2d 36, 38 [1993]). “A bond issued pursuant to State Finance Law § 137 (1) guarantees prompt payment of money due those persons who furnish labor or material to the contractor ‘in the prosecution of the work provided for in such contract’ ” (Harsco Corp., Patent Constr. Sys. Div., 301 AD2d at 93, quoting State Finance Law § 137 [1]).
In Dutchess Quarry & Supply Co. (190 AD2d at 39), the Appellate Division, Third Department, held that a payment bond cannot dilute the protection of State Finance Law § 137 (3) “by imposing notice conditions precedent to payment which are more onerous than that required by [that statute].” Defendants’ attempt to apply the notice and alternative dispute resolution procedures contained in the subcontract to defeat plaintiffs rights under State Finance Law § 137 is clearly in contravention of the public policy reflected in the statute and repeatedly recognized in the case law.
AMCC attempts to distinguish Dutchess Quarry & Supply Co., in which the Appellate Division expressly found that the contractual reduction of the time period to assert a claim against *211 a payment bond is void as against the public policy enunciated in State Finance Law § 137, by the fact that the clause at issue there was a notice provision contained in the payment bond itself, rather than being set forth in the subcontract. However, AMCC’s attempt to apply conditions precedent to suit set forth in the subcontract and not contained in the statute is equally offensive to the policy expressed in the statute regardless of which party created the conditions. See Windsor Metal Fabrications v General Acc. Ins. Co. of Am. (94 NY2d 124, 134 [1999]), in which the Court “refuse[d] to look beyond the face and terms of the bond to the contract provisions” in order to subvert the policy expressly reflected in State Finance Law § 137. Consistent with State Finance Law § 137, the payment bond creates an independent obligation, not contingent upon the terms of the subcontract, to pay for labor and materials provided under the subcontract, subject only to defeasance upon payment by the contractor.[5] See Blandford Land Clearing Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa. (260 AD2d 86, 95 [1st Dept 1999]), in which it is noted that where a subcontractor’s right to recover under the contract fails, the subcontractor retains the right to seek compensation from the contractor based upon unjust enrichment, consistent with public policy as expressed in the Lien Law. See also Tri-City Elec. Co. v People (96 AD2d 146, 149-150 [4th Dept 1983], affd 63 NY2d 969 [1984]). Thus, although proof of a right to compensation due is a necessary prerequisite to recovery upon foreclosure of a mechanic’s lien, since foreclosure is itself an equitable remedy, the failure to comply with contract provisions may not preclude proof of an entitlement to recover in quantum meruit or unjust enrichment.
*212 Conclusion
Accordingly, AMCC’s motion to dismiss AAI’s complaint is granted as to the first and second causes of action based upon defendant AMCC’s alleged breach of the subcontract and denied as to the fourth and fifth causes of action based upon the Lien Law. Liberty Mutual’s motion to dismiss the third cause of action is granted only to the extent of reducing the claim against the bond by that portion of damages asserted for delay, as contained in the second cause of action, and is otherwise denied.

. By a stipulation of discontinuance dated December 7, 2010, AAI discontinued this action as against DASNY.

. It is noted that, in Ferguson, the party against which the contractual dispute resolution provision was enforced had counterclaimed and cross-claimed to foreclose its mechanic’s lien, suggesting that, as defendants argue, the failure to comply with the contractual condition precedent would also require dismissal of the Lien Law causes of action here. However, the case does not address the public policy as reflected in Lien Law § 34 and article 3-A which this court finds precludes dismissal of the Lien Law causes of action. Similarly, in Promo-Pro Ltd. v Lehrer McGovern Bovis (306 AD2d 221 [2003]), cited by both sides, in which the Appellate Division, First Department upheld dismissal of the complaint, including a cause of action to foreclose a mechanic’s lien, based upon the failure to comply with a contractual notice of claim requirement, there is no discussion of the public policy constraints reflected in the Lien Law.

. In light of this finding, it is unnecessary to consider AMCC’s argument that AAI’s second and third causes of action are barred by the “no damages for delay” clause contained in article XIII of the subcontract. AMCC relies upon the holding of Kalisch-Jarcho, Inc. v City of New York (58 NY2d 377, 384 [1983]), which held that such a clause, which exculpates a contractee from liability to a contractor for damages resulting from delays in the performance of the contractor’s work, is enforceable and is not contrary to public policy.
However, in Corinno Civetta Constr. Corp. v City of New York (67 NY2d 297, 309 [1986]), the Court of Appeals noted that this “rule is not without its exceptions” holding that
“ [generally, even with such a clause, damages may be recovered for: (1) delays caused by the contractee’s bad faith or its willful,
*208 malicious, or grossly negligent conduct, (2) uncontemplated delays, (3) delays so unreasonable that they constitute an intentional abandonment of the contract by the contractee, and (4) delays resulting from the contractee’s breach of a fundamental obligation of the contract” (see also Trocom Constr. Corp. v City of New York, 51 AD3d 533, 535 [2008]; Eldor Contr. Corp. v County of Nassau, 6 AD3d 654, 655 [2004]; Bovis Lend Lease LMB v GCT Venture, 6 AD3d 228, 229 [2004]; Tougher Indus. v Northern Westchester Joint Water Works, 304 AD2d 822, 822 [2003]).
AAI has alleged that this case falls within these exceptions to the enforceability of a no damages for delay clause.
In determining a motion to dismiss under CPLR 3211 (a) (7), the complaint must be liberally construed, with the facts alleged deemed to be true, and the plaintiff accorded the benefit of every possible favorable inference (see Leon v Martinez, 84 NY2d 83, 87-88 [1994]; Burnett v Pourgol, 83 AD3d 756, 757 [2011]; Breytman v Olinville Realty, LLC, 54 AD3d 703, 703-704 [2008]). In Trataros Constr., Inc. v New York City Hous. Auth. (34 AD3d 451, 452-453 [2d Dept 2006]) the Court held that a cause of action for delay damages was not precluded by a contract clause like that here where the allegations were sufficient to make out one or more of the exceptions defined in Corinno Civetta. Defendants cannot prevail on their motion based upon article XIII of the subcontract.

. AAI has responded to this argument in a surreply with the permission of the court.

. AMCC has submitted a decision in Moretrench Am. Corp. v Liberty Mut. Ins. Co. (Sup Ct, Kings County, Jan. 22, 2009, Pfau, J., index No. 3944/08), in which its contractual notice provision contained in rider B was enforced, resulting in dismissal of the complaint against Liberty Mutual, also AMCC’s surety on a payment bond in that case. The case is factually distinguishable from the case at bar in that the details in the notice were insufficient and, more particularly, upon the fact that the case apparently exclusively involved a breach of contract and the decision does not address the ramifications of the Lien Law or the State Finance Law. However, in addition to finding the documents insufficient in substance, Judge Pfau found the failure to verify the notice of claim significant. This court finds the Moretrench case to be so significantly different as to be inapposite to the case at bar. To the extent that the reasoning applied therein diverges from this court’s analysis, however, this court respectfully disagrees. In any event, the case is not controlling upon this court as it is a decision of concurrent jurisdiction.